May it please the Court, my name is Ianna St. John and I represent a villain, Amy Yang. Settlements that issue this case treat two sets of class members with claims of wildly different value, identically. As a result, the settlement value for class members with the stronger claims is diluted. At the same time, those class members with weaker claims are recovering more than their claims warrant. I'm sorry counsel, in a perfect world, what's your client seeking? We're seeking a reversal and vacation of the settlement approval and class certification. And in what? Well, litigation would go back to the district court and there would be subclasses created to represent the different interests of the class. What are they trying to recover? They're trying to recover damages. How? What? Well, for the indirect purchasers, it's unclear that they have any damages to control, but there needs to be a separate representative for those claimants to advance the best interests of their behalf. Direct purchasers, likewise, need to have a separate representative to advance their best interests. Is there a specific way of finding damages when we're talking about the difference between what the price that was charged and the price that should have been charged? Is that what it is? What are the damages? What's the change in trouble? There are trouble damages available under the Sherman Act. As far as? Subclasses. They also need trouble damages. The settlement funds here within the millions of dollars as far as what specifically, what specific damages go into that? I'm not sure. Yes, Your Honor, her recovery has been diluted by people who have no claim to reluctant to the same settlement class. Because the classes essentially have at least half indirect purchasers, the statistics about how your total purchasers were made, they show that most purchasers during the class period went through intermediaries who are indirect purchasers. Ms. Yang purchases directly from the airline website. She's a direct purchaser, it's undisputed. Her claim is worth more as a matter of law. And so by having a class that includes both, those without a claim, the indirect purchasers, siphon money away from those who have a direct claim. Who are direct purchasers and have a claim. The district court committed a legal error here by failing to evaluate the strength of the plaintiff's case. If the court had looked at the claims and assessed the merits as required under traditional village in Ortiz, the court would have seen that these claims have materially different value. We're not asking for anything more than what I'd like to recall in Ortiz or what you require. And the district court failed to do that. Rule 23A4 provides an important separate protection from conflicts of interest. It's distinct from the analysis of overall settlement fairness. Under Rule 23E, M. Kim and Ortiz are very clear on this point. Just because a settlement is fair in the aggregate, doesn't mean that a clause should be certified. There still needs to be rigorous adherence to protections from conflicts of interest provided by Rule 23A4. But the district court only considered the settlement fairness in the aggregate. But even under Rule 23, the district is required to do that. Required to analyze the strength of the plaintiff's case, yes, and that necessarily involves an analysis of the fairness. The court had to look at the overall settlement of fairness and whether there were conflicts between the clause members. That should have resulted in a separate representation of those interests. And we saw corporate authority rule on this in Lee v. Facebook in 2012. Lee v. Facebook only involved a challenge to the aggregate settlement amount. We are not arguing the settlement amount should be different here. We're challenging the lack of structural protections to ensure that settlement amount was allocated fairly amongst clause members with claims of very different value. Lee v. Facebook did not address the adequacy of representation at all. But what is the common difference in value? You have a lot of people who may have paid different amounts for tickets. This is a claim that has to do with the result of an alleged antitrust conspiracy to set prices. But you say that there would be different values. What is the common denominator of the difference, if that makes any sense? Well, indirect purchasers don't have the claim at all. So I would argue that you're saying value is zero. So they should be in a class with direct purchasers so that they don't get money. But this is true. So that they don't sign away money that should really go to the direct purchasers. Yes. At least they should have an advocate, a separate advocate, who can say, well, maybe not zero. There's at least some use of settlement value here. They should get something. And at the same time, you should have a separate representative saying, well, the direct purchaser claims are worth significantly more. These are legitimate claims. They didn't face the same legacy risk. And they should recover the overwhelming bulk of the settlement funds. That's what we want. In case your client had a chance, once the client received notice, your client could have opted out or rejected. Yes. This court and other courts have held that that's not a sufficient protection. It's unrealistic in a class action context to have someone with a small claim bring a individualized litigation. So how do you believe your client has a small claim? As far as the cost is compared to the cost of bringing a separate litigation, it probably doesn't warrant the thousands of dollars that would cost this direct owner. Our vision is she has a small claim individually, but as class representative, she would have a much bigger claim. Right. And that's what we have in place. Right. Collectively, the direct purchaser class lost millions of dollars by not having someone separately appointed to represent their interests. And under Rule 23, she legally is entitled to pursue representation of that class. Yes, Your Honor. And under Ortiz, a claim doesn't have to have been litigated to adjudication or resolved by adjudication or have serious settlement value before there's a conflict between two sets of class numbers. There just needs to be a material difference in the settlement value, and we clearly have that here. Illinois Briggs has a bright line rule that indirect purchasers don't have a claim. The plaintiff's not disputed that. The plaintiff's also don't dispute that the classes are defined to include people who purchase air travel through intermediaries, such as travel agents or travel consolidators. They claim only that those people are not indirect purchasers, that only direct purchasers exist in the air travel industry. And that's just not true. Illinois Briggs has a bright line rule with two narrowly constricted exceptions that are not applicable here. And do you want to address the foreign originating travelers versus the domestic originating travelers? Do you want to address that as well? Yes, Your Honor. That's an issue that arises in the Japan Airlines settlement only. And similarly, foreign originating travel purchasers have a significant vacation risk. The purchasers of U.S. originating travel do not. And that was vividly illustrated by the district court's order in this case dismissing the foreign originating travel claims after the Japan Airlines settlement was reached. But that litigation risk was well known at the time of the Japan Airlines settlement. The motion to dismiss was filed months before the notice of the settlement agreement with Japan Airlines was filed with the court. The district court relied on longstanding precedent, applying the Foreign Trade and Antitrust Inclusion Act, which has been on the books since 1982. And so, again, we have a clear difference in value based on the material defense and material litigation risk that purchasers of U.S. originating travel didn't face. Did you procedurally comply with the district court grant promotion after the settlement? It may have been a busy docket. I'm not sure. I'm not sure about that. But it was filed before the settlement was reached. And it was an argument that was made to establish a subclass under 23A4? Well, this case arose before the settlement came about, before the class was certified. Ms. Yang presented her objection after preliminary approval. But because this class certification had not been braved, there had not been any arguments, as far as I know, by defendants or others to create subclasses. But that raises the important point that because these settlements were reached before class certification, the district court had a duty to pay heightened attention to potential conflicts of interest. And that's because at the settlement stage, before class certification, both defendants and class counsel have an interest in having a settlement class as large as possible. Defendants, if they can get more releases of claims, have a single litigation. Class counsels may have a larger body of claims for which to get fees. If we're not asking the district court even to determine how much a legal claim should be discounted or how much a claim should be valued, we're simply saying that because there's a material difference between the value of these claims, there shouldn't have been subclasses. So they do argue that you want the overall class membership to receive less so your client can receive more? Well, the overall settlement should stay the same or increase. The point is that there needs to be a separate advocate for the two sets of claimants to decide how that amount is allocated to a portion of you. Yes. So how do we look in the records to see what this difference is between the direct and indirect purchasers? The existence of a difference arises from life other than nine times long. Ms. Yang brought the objection to the court's decision. That's a clear instance where the court was aware of it. Well, the court's decision prior to that. We've been living with this for a while. And he said, well, there may be differences in the values of the claims of the class members. The settlement as a whole is substantial and fair. And that's what more should be done in recognizing that yours is more than just a difference in the amount of claims but something overargingly more important. Rule 23A.4 requires him to look at the value of the claims and the fact that Ms. Yang submitted an objection but not subtly definished it with a letter saying, we believe indirect purchasers should be dismissed from the case and we intend to bring this argument to the court shows that it was a strongly litigated issue, a strongly contested issue, and that should have alerted the court to the potential conflict of interest between the two sets of claimants. Is there a motion? Yes, Your Honor. Thank you. Good morning, Your Honors. So I think the place to start is with the standard of review here. What the Ninth Circuit has said when it comes to class action settlements is that the district courts have wide discretion. It's an abusive discretion standard as to whether to approve an overall class action settlement. And with respect to the real issue here, which is this allocation issue amongst members of the class, the Ninth Circuit has said that the standard is one of clear error. So what the Ninth Circuit has said is that district courts who look at these cases, who understand the nuances, have a wide berth to make determinations in this particular instance with respect to how to allocate the funds that we have been critical lately of providing the proper stamping of class action settlements because, honestly, attorneys don't really have much of an incentive to separate the classes and the attorneys aren't interested in the 12th pool of money, and so there's no real method in that respect. So what does that place us to do in terms of bargaining? So I would actually take you assuming that I don't think that accurately represents what plaintiff's class action attorneys at least in my firm. That's not how we think. But, set that aside, the three cases that the objector relies upon, Amchem, Ortiz, and payment cards, recognize that there can be differences. We're talking about 2384 and whether there is a need for separate representation of different cards within the class. And I absolutely think it's said best in the payment cards you use out of the Second Circuit. There can be gradations between class members, and that alone does not give rise to a right to separate representations. What it says in payment cards is when the fault lines between the different groups are so pronounced or so fundamental that there needs to be separate representation. There's a very strong opinion of plaintiffs who have lost a 0% chance of appealing if they were litigated on their own. If there's another group, there's another class of plaintiffs, at least if they were in the state, that's with them that has almost a 100% chance of prevailing if they were litigated on their own. Why wouldn't that be such a big difference that they should not be grouped together? Right, so when I finish with payment cards, then I'm going to answer that direct question, okay? So with respect to payment cards, one point I wanted to make, and Amgen and Ortiz, they all follow the same pattern, which is that class lawyers, on the face of the settlement agreement, are making distinctions between various groups of class members, future claimants, present claimants, in the asbestos context or, for instance, in the payment card context. So on the face of the settlement agreement itself, parties are making distinctions about how different groups are going to be compensated or what their relief is. And that's important here because the plaintiffs, in this case, are not making that distinction. So here is the case that answers the question that you asked, and that is the Sullivan v. Stevey Investments case out of the Third Circuit. Indirectly, it's not pointing to this issue. And what the Third Circuit said is that it is not the function of the district court to start trying to weigh the strengths and weaknesses of the case when it comes to allocating the settlement funds. It did it in the context of this direct versus indirect purchaser issue under the antitrust laws. In that case, there were purchasers of diamonds, okay, indirectly, and the settlement was for several hundred million dollars to be allocated to purchasers in every state. Well, counseling that case under 23-A-2, there's a commonality. Wasn't there an issue with that as well? Maybe indirect versus direct. Well, it was indirect. Right? So the court said, we're not going to begin to weigh those differences in the context of the allocation of the proceeds because what the plaintiffs were saying is that they had certain rights, even in those indirect purchaser states, under the Sherman Act, which is a federal statute, the Sherman Act is an antitrust statute, for injunctive relief and other things. And it's not the function of the court to try and tease out all of the claims those indirect purchasers had and make separate determinations about how valuable the claim is for a person in Indiana where there is no indirect purchaser right of relief versus California where there is. So that's a specific case that deals with, you know, I think the instance of a court saying, we're not going to do this. Weren't there separate classes? Was there a direct purchaser class  So there's fundamental misunderstanding, I think, by the objector's counsel as to whether, in fact, in this particular case, you do have indirect purchasers. Yeah, but that's a different argument. You said that this case, Sullivan, was going on an address specifically for her argument. But it wasn't because in that case, there were two separate classes for the direct and indirect. And that's what she's asking for. She's asking for subclasses, one with direct purchasers and one with indirect purchasers. So if we were to follow Sullivan in that respect, we would agree with her. Well, right. So the reason Sullivan is wrong is to decide in a general class. I'm just talking about indirect. For Sullivan, the point is that there are differences between state laws. And there was a class of indirect purchasers in Indiana and California. People lost those two states when it comes to this issue of whether an indirect purchaser can recover their direct purchases. Right. And she is the third. So you can't follow her and separate the indirect purchases from direct purchases. Right. And my response to that is that there is no such distinction here. And the record shows there is no distinction here. And again, there has been no evidence in advance to show that there are, in fact, indirect purchasers in this case. The basic premise of the argument that has been advanced by the objector is that there is a difference, that there is an indirect purchase of air transportation. The ticket, when you buy from the travel agent, that is, you buy from the airline's website directly, United Airlines. And you can go to united.com and buy the ticket. I totally agree. And if there are direct purchasers and indirect purchasers, then they should be different classes. If the plaintiffs were able to establish that there is such a thing as direct purchases versus indirect, would you agree that they should be different classes? Not necessarily. I think it depends on the actual producer. That's all I'm saying. Well, I don't think the issue in Sullivan, as I recollected, was really related to the issue about how to allocate the proceeds amongst indirect purchasers. It really is. You can't really choose what part of it you like and what part you don't like. It's all as much as it's directly on point. Yeah. I do think it is on point as to the issue of allocation and what the district court's job is with respect to how to allocate and the wide berth that is given to the district court judges to make a decision about how to allocate. OK, so I don't think I finished my point, though, which is I don't think there are indirect and direct purchasers here because the fact of the matter is the way tickets are issued is in the name of the person who purchases the travel. And travel agents act exact as agents. And it's due to historical practice, but it's also due to governmental regulations regarding security and other things that there is never title taken to the ticket itself before the ticket is issued. So the travel agent does not gain title to tickets and then resells them. And common experience is that you can't take the ticket that you purchased, cross out your name, and give somebody else's name, sell it to them, put somebody else's name on it, and expect them to be able to get on the plane. The airlines don't allow it. Transportation Security Administration doesn't allow it. So our point is there's no evidence about whether there's a direct or indirect issue here. I'm sorry, counsel, I don't quite understand that last analogy. Say that again. Well, the point is if I were to go and buy a ticket for air transportation, I can't then turn around and sell the ticket to my colleague, cross out their name, or my name. I didn't put in their name. The airlines won't allow that person to board the flight. Transportation Security Administration won't let them get on the plane. And that is why the system has developed the way it has in this business, where the ticket is the travel agency. In fact, they're agents of the airlines. They issue tickets on behalf of the airlines. They don't give title to them. It's the idea that there is a real indirect direct and indirect direct. So you're not making the opposing counsel make her argument that under 23A4 representation was not adequate? No, I think I'm saying the opposite. I'm saying that the objector has identified a distinction in the method of purchase that is not relevant to the issue of whether somebody is a direct purchaser or an indirect purchaser, such that if the court had a concern, either at the appellate court level here or down below before Judge Breyer, that he should be weighing, and the counsel should be weighing seriously, the differences in the method in which these tickets were purchased in terms of the valuation. I think the only distinction was the Illinois break between direct and indirect purchases. Why was there a distinction made in that case? Title was taken in Illinois break. You had manufacturers of these concrete blocks, and they were sold to distributors. And in Illinois break, there was a further sale. So there was title transferred once and twice. And what the Supreme Court said in Illinois break is through sales, you got a direct level and an indirect level. And as a matter of public policy under the Sherman Act, we are only going to allow direct purchasers to sue for damages. The indirects still have a Sherman Act claim for deductible damage. They always do. Well, it transferred necessarily to sales. I think that the bricks were incorporated into its building, so that there was not a sale of the bricks as bricks to the ultimate consumer. They were incorporated into the building to be able to build these handles. So that's a further distinction about it. But with the way the case law in this area has developed and you have it, if there is an indirect purchase. And the law in this area has developed over time. There have been arguments and cases in the electronics sphere and in other areas where the antitrust cases go on, where the question is, does the indirect purchase that we have had those two transfers? And as part of the transfer, there's also been a transformation. So let me give you an example. LCDs. There was a huge case in this district not too long ago involving LCDs. The panel itself was fixed. This first purchaser then transformed that LCD screen into a television. And there was a sale of that television to a consumer. So there was a question of, are you a direct or an indirect? And the consumer was clearly indirect because there were two transfers of the screen. There was a further issue, which was, can that indirector, does it have standing to sue for purchasing the television where the screen was incorporated into the television? And the courts, at least at the district court level and in LCDs and CRTs and a number of other cases, have said, yes, the indirector does have standing to sue under the state law for damages. And that component is a significant portion of the overall profit. I understand that these people are buying tickets. They're buying tickets. Yeah, well, if they buy the tickets, you can't directly or indirectly install them. So you can install them. And nobody else has already been informed. No. Which is the difference between this case and any other. Greg, do any of these other cases on LD or foreign originating murders or domestic originating? And do you agree that the district court dismissed those claims? So the district court dismissed the foreign originating claims. But here's the important thing for our purposes here in evaluating the fairness of the settlement and the propriety of the application. And did that after we settled the case with the Japan Airlines. And as the class counsel, the issue is not yet percolated up to the Ninth Circuit to decide whether, in fact, that was a proper determination. I've heard about district court decisions to make your argument before. So why can't we look to a district court decision  The district court dismissed those claims. And apparently those claims were of less value than the claims of domestic originating travel. So why doesn't that support Heidi's argument? Let me tell you how things happened in this particular case. The settlement with Japan Airlines, which is the only one that has this inbound-outbound issue, that settlement occurred before the district court ruled. So what did we do as plaintiffs' counsel after the decision was made? We settled outbound US claims only, and with no release for the inbound claims. The issue about whether Judge Breyer was right in deciding whether, under the STAIA, those foreign originating claims should or should not be in this case is something that we are still litigating. There are still defendants in this litigation outstanding. And if we get to that point where there's a trial and an appeal, we will bring that back to the Ninth Circuit for further determination. But double-double. Would this group of plaintiffs be able to preserve their argument about the settlement in the meantime? So if it does come to the Ninth Circuit, will they be entitled to take advantage of the ruling if there's a determination that Judge Breyer was correct? Well, our position is that we settled the case with respect to the Chow-Sullivan class. The issue in our judgment is resolved in the sense that we settled the case. There are certain releases that are associated between the class and Chow, and compensation that flows from that. So my point is that those individuals, the foreign-bound plaintiffs should not have been included in the settlement. So how does she get a resolution of that issue if we don't resolve it here? Well, so let's be clear. Objector Yank is fully participating in the settlement in terms of erratic distribution. It's a question of allocation in this case, as opposed to how does the Ninth Circuit, or the Supreme Court for that matter, finally resolve the issue of where exactly the contours are between what claims you can bring under the Sherman Act and what claims are foreign-entry claims. There's a simple answer to this particular appeal. Our argument is that the foreign-originating plaintiffs should not have been able to siphon off money. That should have been allocated to the domestic originating class. But right now, apparently, Judge Breyer agreed that the claims of the foreign-originating travelers should not have merit. And after the fact was filled, her position going in was that those claims do not have merit. It should not be a deal with those that do have merit. So why isn't there a legitimate position? We're here now to decide that point. So why isn't there a legitimacy, even after the fact, even though after the fact, Judge Breyer has validated that position? Well, I would urge you to exercise restraint on determining that thorny, thorny issue of where the FDAIA ends in terms of the contours of a viable Sherman Act claim. It hasn't been fully briefed to this panel. And I would have a lot to say about the fact that what the FDAIA says is it allows of any claim under the Sherman Act, he believes to import trade or import commerce. Are these issues enough of a difference in those claims that they should be separate from subclasses? The answer is no, Your Honor. If you give the district court the wide latitude that has been readied by some prior line circuit authority to make these decisions, it was within the discretion of the judge to do that. I understand the position. Thank you, Your Honor. Thank you, Your Honor. Thank you, Your Honor. Thank you. Plaintiffs are making arguments about the travel industry that are not on the record and not in any case law that they cited in their briefs. But even assuming it's plausible, the plaintiffs do show that every purchaser who went through an intermediary to purchase air travel can sugar themselves into an exception to Illinois brick. They still have to marshal all those contracts before the district court and make those arguments. And there's less of a significant litigation hurdle those intermediaries, those purchasers through intermediaries have to show as a greater litigation risk that makes the value of their claims materially less. Regarding the standard of review, class certification is reviewed for abuse of discretion. Legal error is reviewed to no vote. And a legal error necessarily constitutes an abuse of discretion. We're arguing there was legal error here because the district court didn't evaluate these issues, didn't evaluate the strength of the plaintiff's claim as required of the judicial knowledge. Ortiz is an important decision here because it held that the decision to trade claims equally when there were material differences in the value of those claims reflects an allocation decision that would almost certainly have been different if the two sets of class numbers with differently valued claims had had separate representations. This case clearly fits within the contours of Ortiz. If we had had separate representation for direct and indirect claimants, purchasers, and between U.S. originating travel purchasers and foreign originating travel purchasers, we'd see a result that's much different than what we have here. We'd see U.S. originating travel purchasers and direct purchasers recovering far more. But because they were all lumped into one settlement class, those with the stronger claims lost millions of dollars. Unless there are any further questions, I'll leave it at that. Thank you. Thank you. Those were pretty helpful arguments in this case. This case is now adjourned. It was a decision by the court. We will hear the final case on the outcome of the argument in this Broadway Real vs. Seaside.
judges: Schroeder, Rawlinson, Logan